UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

TAMMY FREEMAN,

     Plaintiff,                                   CASE NO.:

vs.

BROWARD COUNTY SCHOOL DISTRICT

     Defendant.

_____/

## **COMPLAINT**

COMES NOW the Plaintiff, TAMMY FREEMAN (hereinafter "FREEMAN"), by and through the undersigned counsel, and sues the Defendant, BROWARD COUNTY SCHOOL DISTRICT (hereinafter "BCSD"), and alleges the following:

## **JURISDICTION AND VENUE**

1.    This is a civil action with damages that exceed Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

2.    This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the following: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3.    Venue lies within the Southern District of Florida, Fort Lauderdale Division, pursuant to 28 U.S.C. § 1391(b) because all actions relevant giving rise to this claim arose in this Judicial Circuit.

## ADMINISTRATIVE PREREQUISITES

4.      All conditions precedent to the maintenance of this action have been met.

5.      On or about October 19, 2021, Plaintiff, FREEMAN, timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  A copy of said Charge is attached hereto as **Exhibit "A."**

6.      More than 180 days have passed since FREEMAN filed her Charge of Discrimination with the EEOC.

7.      On or about October 20, 2022, the U.S. Department of Justice Civil Rights Division issued a Notice of Right to Sue, acknowledging that more than 180 days had passed since FREEMAN's filing of her Charge.  A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B."**

8.      This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

9.      Plaintiff, FREEMAN is an individual who resided in Lake Worth, Florida, during the time of her employment with BCSD.  At all times herein mentioned, FREEMAN was employed by BCSD at Monarch High School.

10.     BCSD is duly authorized and licensed to do business in Broward County, Florida. At all times material, BCSD was and is engaged in the business of providing public education to children with more than fifteen (15) employees.

11.     At all times material, BCSD's primary place of business was and is at 600 SE 3rd Ave., Fort Lauderdale, FL 33301.

12.     At all times material, BCSD operated Monarch High School, which was located at 5050 Wiles Rd., Coconut Creek, FL 33073.

13.     FREEMAN was employed as a full-time English teacher at Monarch High School by BCSD from July 1, 2007 through January 17, 2022.

14.     FREEMAN's direct supervisor was the Principal of Monarch High School, James Neer.

15.     Throughout her fourteen (14) years of employment with BCSD, FREEMAN was given positive performance reviews and feedback, prompting her to seek to elevate her career by applying for the LEAD program and Assistant Principal positions within BCSD.

16.     FREEMAN was and is a member of a group protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII) and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 (FCRA)'s prohibitions against race and sex discrimination and retaliation. Namely:

    a.  She is female;

    b.  She is African American; and

    c.  She suffered an adverse employment action shortly after making a formal complaint regarding the discriminatory treatment she was experiencing in the workplace and BCSD's unlawful business practices.

17.     At all times material, BCSD was and is an "employer" as defined by Title VII.

18.     At all times material, BCSD was and is an "employer" as defined by the FCRA.

## FACTUAL ALLEGATIONS

19.     During the 2012-2013 school year, after years of employment with BCSD, FREEMAN earned her Education Leadership degree, which qualified FREEMAN to apply for the Leadership Experiences and Administrative Development Program also known as the "LEAD

Program". The LEAD Program is designed to provide teachers a program to develop and demonstrate leadership skills to work towards becoming a school administrator.

20.     Although FREEMAN was fully qualified and repeatedly earned 'effective' or 'highly effective' scores on her performance reviews, each year she applied for the LEAD Program, BCSD turned her down.

21.     While FREEMAN was turned down for the program for years, despite her high qualifications, similarly situated predominately white, male teachers were repeatedly accepted into the LEAD program.

22.     One such white, male teacher was David Piroozshad, who applied for the LEAD program at the same time as FREEMAN in 2015. After being at Monarch High School for just eight months, Mr. Neer recommended Mr. Piroozshad for the LEAD program.

23.     In doing so, Mr. Neer completed a principal recommendation survey for Mr. Piroozshad. While Mr. Neer claimed to have given Mr. Piroozshad the same scores on the survey, FREEMAN later saw her completed recommendation survey, which included scores that averaged to a "C".

24.     In response to FREEMAN's repeated denials, Assistant Principal at Fort Lauderdale High School, Karleen Thompson, reviewed FREEMAN's resume and essay and advised FREEMAN that based on those documents, it had to be as a result of the scores on the principal recommendation survey.

25.     In contrast, in response to FREEMAN's repeated denials in to the LEAD program, Monarch High School Principal, James Neer, told FREEMAN, "It's best anyway so you can take care of your kids."

26.     According to BCSD, when an applicant does not complete a phase of the LEAD Program, there is a follow up scheduled requesting to speak with the applicant one-on-one to review areas of improvement. Despite such policy, FREEMAN was not contacted following her denials into the LEAD Program.

27.     In fact, following her denials from the 2014/2015 LEAD Program as well as the 2015/2016 LEAD Program, it was FREEMAN, herself, who sought guidance from BCSD officials and self-arranged meetings to review areas of improvement.

28.     During the 2017/2018 school year, FREEMAN was awarded the Broward County Teacher of the Year award. The same year, despite clear evidence that FREEMAN was a renowned teacher, leader, and valued member of Monarch High School, she was, again, denied access to the LEAD Program and unable to elevate to an administrator position.

29.     Without an understanding as to why she was being denied progress through the LEAD Program at this time, FREEMAN continued to apply school year after school year.

30.     It was not until May 2020 that FREEMAN was ultimately permitted to complete the LEAD program and begin applying for administrative positions, namely as an Assistant Principal within the Broward County School District.

31.     As part of the application process for an Assistant Principal position, FREEMAN was required to identify references through BSCD's Applitrak system to complete Reference Surveys. FREEMAN identified Dr. Moira Sweeting-Miller, Lisa Spencer, and the principal of Monarch High School, James Neer.

32.     Dr. Sweeting-Miller and Ms. Spencer completed the Reference Surveys on August 3, 2019 and May 27, 2020, respectively. While Mr. Neer, arguably the most important reference

as FREEMAN's direct supervisor, received the Reference Survey on May 26, 2020 and August 23, 2020 through the Applitrak system, he did not complete it.

33.     FREEMAN submitted several manual requests for completion and reached out personally to Mr. Neer in August 2020 for the survey completion, Mr. Neer provided repeated excuses to avoid completion of the Reference Survey on behalf of FREEMAN.

34.     After applying for several Assistant Principal positions without Mr. Neer's reference with no success, FREEMAN contacted several mentors, including Dr. Sweeting-Miller and Karleen Thompson, requesting advice. Thompson advised FREEMAN to seek opportunities in another school or school district rather than face continued discrimination at the hands of Mr. Neer, sharing her own experiences of discrimination at the hands of Mr. Neer.

35.     Dr. Sweeting Miller suggested FREEMAN contact Mr. Neer for a letter of recommendation. Dr. Sweeting-Miller confirmed to FREEMAN that without a principal endorsement, principals from other schools would not consider FREEMAN for *any* Assistant Principal positions.

36.     Another BCSD employee, Michelle Kefford, 2018's Principal of the Year for Broward County, and 2019's Principal of the Year for the State of Florida, confirmed to FREEMAN that a principal endorsement was vital in obtaining an Assistant Principal position within BCSD.

37.     After repeated unsuccessful attempts at obtaining the Reference Survey from Mr. Neer, FREEMAN took Dr. Sweeting-Miller's advice and requested a letter of recommendation from Mr. Neer in January 2021.

38.     When it was received on February 2, 2021, Mr. Neer had neglected to add *any* of FREEMAN's numerous leadership accomplishments. The letter spoke solely to FREEMAN's role

as a teacher in the classroom, failing to put forth any support for her ability to elevate to a leadership and assistant principal level position.

39.     After receiving the initial letter of recommendation from Mr. Neer, FREEMAN contacted Mr. Neer on February 2, 2021 and requested a more detailed letter that included not only her teaching abilities but her leadership accomplishments.

40.     Mr. Neer responded via email, requesting a copy of the letter he wrote as well as a list of FREEMAN's leadership roles, despite the fact that Mr. Neer was the one who appointed FREEMAN to many, if not all, of her leadership roles while employed at Monarch.

41.     In response to Mr. Neer's request, FREEMAN sent Mr. Neer a detailed, multi-page list of all her leadership accomplishments including, without limitations, creating Instructional Focus Calendars, serving as a coordinator, liaison, and leader for various committees and groups, creating surveys and workshops, developing a plan for the Comprehensive Health Mandate, developing programs and plans for culturally responsive professional development, mentoring and coaching new teachers, leading monthly meetings, and creating and providing mini workshops such as 'Unwrapping the English Language Arts FSA,' 'Unraveling the Writing FSA,' etc.

42.     Following receipt of the list of at least forty (40) leadership accomplishments, Mr. Neer declined to provide FREEMAN with a new letter that included even *one* of the items on her list.

43.     In an attempt to facilitate a more detailed letter, FREEMAN drafted her own letter and provided it to Mr. Neer to review and revise accordingly.

44.     On February 3, 2021, Mr. Neer and FREEMAN discussed the letter of recommendation over a TEAMS meeting. Initially, Mr. Neer refused to use FREEMAN's letter or

revise his own to include necessary leadership skills and accomplishments, claiming his letter as "good enough" and was the one he wanted FREEMAN to use.

45.     During the TEAMS meeting, FREEMAN specifically advised Mr. Neer that she felt he was discriminating against her and intentionally preventing her from advancing in her career because she is a black woman. FREEMAN specifically compared Mr. Neer's level of support for her with that of similarly situated non-black, male employees such as David Piroozshad and Chris Machado, who were consistently supported by Mr. Neer and elevated within the District.

46.     Mr. Neer responded that it was the District that was discriminating against FREEMAN, not him.

47.     FREEMAN went on to provide Mr. Neer with specific examples of discriminatory treatment she had experienced, highlighting Mr. Neer's favorable treatment toward non-black and male comparators including David Piroozshad and Chris Machado.

48.     It was only after FREEMAN's reporting of discriminatory treatment that Mr. Neer provided FREEMAN with an updated letter of recommendation to include some of her leadership accomplishments.

49.     However, following the letter of recommendation, Mr. Neer failed to advocate for FREEMAN, making false claims that he was reaching out to other principals within the District to request they interview FREEMAN for assistant principal positions. Instead, Mr. Neer reached out to possibly one principal, Casandra Robinson of Dillard High, out of FREEMAN's applications, sometimes repeated applications, to at least twenty-one (21) schools within the District. At the same time, Mr. Neer advocated for similarly situated male employees to complete their programs and obtain positions with the administration.

50.     Without the support of her direct supervisor, Mr. Neer, FREEMAN was effectively barred from obtaining an assistant principal position despite her qualifications and work ethic.

51.     It was only *after* FREEMAN filed a complaint with the Broward County EEO in April 2021 that FREEMAN received her first request for an interview for an Assistant Principal position in June 2021.

52.     Ultimately, in August 19, 2021, FREEMAN, after years of discriminatory treatment and a refusal by Mr. Neer and BCSD to promote FREEMAN to an administrative position that she was well qualified to fulfill, was forced to apply for a hardship transfer to Boyd Anderson High School.

53.     FREEMAN transferred to Boyd Anderson High School on September 1, 2021. Following the transfer, however, FREEMAN was still prevented from advancing her career within BCSD as Mr. Neer declined to provide FREEMAN the reference or support she needed to advance. As such, FREEMAN was ultimately constructively discharged on January 17, 2022.

54.     During this process and experience, FREEMAN came to the realization that Mr. Neer's discriminatory treatment towards her was not new, but had persisted throughout her employment and that other African American and black employees had been subject to similar, unfavorable treatment by Mr. Neer due to their race.

55.     Specifically, FREEMAN observed her non-black, non-African American colleagues obtaining higher level positions and being supported by Mr. Neer throughout her career as a teacher at Monarch High.

56.     Specifically, Mr. Neer supported only non-black, male employees in their efforts to advance to administrative positions within BCSD including the following:

a.  David Piroozshad, a less qualified and less experienced white male, who applied for the LEAD program at the same time as FREEMAN starting in 2015, received a recommendation from Mr. Neer after being at the school for just eight months. Further, Mr. Neer placed himself on the panel to assist Mr. Piroozshad to get into the program. Mr. Piroozshad, with the support of Mr. Neer, became an assistant principal in 2017; and

b.  Christopher Machado, a less qualified and less experienced white male, who received numerous public reprimands, completed the PROPEL leadership program in December 2020. With Mr. Neer's support and recommendation, became an assistant principal shortly thereafter in October 2021.

57.  Further, Mr. Neer selected only white teachers to teach Monarch High School's AICE language arts classes, despite FREEMAN and other African American teachers having vastly more experience than the selected teachers. Mr. Neer's reasoning behind these selections is that parents wanted teachers who teach those courses to look like the students taking them. These teachers included:

a.  Ms. Guimaraes, a white female, who was hired to teach English at Monarch High School in 2019, was selected and requested by Mr. Neer to complete the Cambridge training.  Prior to her position, Ms. Guimaraes was a substitute teacher that was certified in history. As early as Ms. Guimaraes' first year as a full-time teacher, Ms. Guimaraes was teaching a Cambridge AICE course;

b.  Ms. McGuire, a white female, who was hired at Monarch High School in November 2017 was asked by Mr. Neer to complete the Cambridge training in May 2019, less than two years into her career with Monarch. Ms. McGuire taught a Cambridge

AICE course during the 2019-2020 school year, where she was eligible to ear

bonuses based on student testing results; and

   c.   Ms. Parenti, a white female, who was hired to teach English at Monarch High

School in March 2019, was selected and requested by Mr. Neer to complete training

and teach a Cambridge AICE course in May 2020. Ms. Parenti, during her first full

year as a teacher was teaching a Cambridge AICE course. Ms. Parenti reached out

to FREEMAN, expressing surprise and feeling honored she had been asked to teach

such a course "this early in my career."

58.    The *only* African American teacher selected to teach an AICE course at Monarch

High School was Ms. Jacobs-Reed, who taught ORE-AICE French 2 and AICE French Language.

Ms. Jacobs-Reed was selected because she was the *only* teacher on campus certified to teach

French.

59.    Mr. Neer did not ask or request for any black or African American teachers,

including FREEMAN, to teach an AICE or Advanced Placement course despite a collective of

over 90-years of experience between the four teachers. Rather, inexperienced, white teachers were

selected for these more prestigious positions, evidencing the underlying racial bias that has existed

against FREEMAN throughout her employment and ultimately prevented her from advancing her

career and becoming an assistant principal.

60.    Not only did Mr. Neer fail to support FREEMAN in her attempts for advancement,

Mr. Neer made repeated and continuous inappropriate discriminatory comments about and around

FREEMAN, including, but not limited to:

   a.   Mr. Neer made comments about FREEMAN being "better off with her kids" rather

than supporting FREEMAN's attempts to elevate and advance in her career;

b. On or about October 29, 2020, Mr. Neer informed FREEMAN about a black assistant principal at Monarch High School, Dr. Cox, a few years prior. During the conversation, Mr. Neer made it clear to FREEMAN that he had not wanted to hire Dr. Cox, but that he was forced to hire her over a white male, Mr. Lopatin. Mr. Neer concluded the conversation with inappropriate, racially charged remarks that he knew Dr. Cox would never make it because she had "too many opinions" and was "strong-headed"; and

c. Mr. Neer's stated that parents of the students wanted teachers who teach those courses to look like the students taking them in reference to advanced courses such as AP and AICE classes.

61.    Any alleged nondiscriminatory reason for this treatment of FREEMAN by BCSD, through Mr. Neer, is a mere pretext for the actual reason for discriminating against FREEMAN based on her race.

62.    As a direct and proximate result of BCSD's actions, FREEMAN has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment, justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and punitive damages according to proof against BCSD.

63.    FREEMAN has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and the FCRA and is required to pay her attorney a reasonable fee for services rendered in this case.

## COUNT I – RACE DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1965, AS AMENDED

64.     Plaintiff FREEMAN incorporates the allegations contained in Paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex [i.e. gender], or national origin."  42 U.S.C. § 2000e et seq.

66.     BCSD is an "employer" as defined by Title VII.

67.     FREEMAN is a member of a protected class of African American citizens.

68.     At all times necessary, FREEMAN was qualified to perform her duties not only as a teacher with the district but was also well qualified to be an Assistant Principal within the District.

69.     During the course of FREEMAN's employment with BCSD, FREEMAN was subjected to a discriminatory, hostile, and offensive work environment because of her race, as more fully described in the General Allegations.

70.     BCSD's discriminatory, hostile, and offensive work environment, as detailed in the above paragraphs of this Complaint, was offensive to FREEMAN and would be offensive to a reasonable person.

71.     The principal of Monarch High School, James Neer, directed much of the conduct referred to in this Complaint at FREEMAN.

72.     FREEMAN's Caucasian and non-African American counterparts were not subjected to a discriminatory, hostile, and offensive work environment.

73.     Upon information and belief, BCSD treated similarly situated Caucasian and non-African American employees more favorably than they treated FREEMAN, including but not limited to, support and advocacy of those employees to administrative positions, promotion to higher level positions, selection for advanced teaching positions, and opportunities to earn bonuses and higher pay.

74.     On January 17, 2022, FREEMAN was constructively discharged, having been left with no choice but to initially request a hardship transfer to another school and ultimately resign from BCSD because of the ongoing discriminatory treatment, in violation of Title VII.

75.     As a direct and proximate result of the foregoing, FREEMAN has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and other forms of damage.

76.     What is more, the aforementioned actions of BCSD were willful, wanton, intentional, and with malice or with reckless indifference to FREEMAN's statutorily protected rights and the consequences of such actions, such that FREEMAN is entitled to punitive damages.

77.     FREEMAN has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause.

## COUNT II – RACE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

78.     Plaintiff FREEMAN adopts and incorporates by reference the allegations in Paragraphs 63 of this Complaint as if fully set forth herein.

79.     At all times material hereto, BCSD failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or

refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

80.     BCSD is an "employer" as defined by § 760.09(7) of the Florida Statutes.

81.     FREEMAN is a member of a protected class of African American citizens who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

82.     At all times necessary, FREEMAN was qualified to perform her duties as a language arts teacher in addition to being fully qualified for advancement into an administrative position within BCSD.

83.     During the course of FREEMAN's employment with BCSD, FREEMAN was subjected to a discriminatory, hostile, and offensive work environment because of her race, as more fully described in the General Allegations.

84.     BCSD's discriminatory, hostile, and offensive work environment, as detailed in the above paragraphs of this Complaint, was offensive to FREEMAN and would be offensive to a reasonable person.

85.     The principal of Monarch High School, James Neer, directed much of the conduct referred to in this Complaint at FREEMAN.

86.     FREEMAN's Caucasian and non-African American counterparts were not subjected to a discriminatory, hostile, and offensive work environment, like she was.

87.     Upon information and belief, BCSD treated similarly situated Caucasian and non-African American employees more favorably than they treated FREEMAN, including but not limited to support and advocacy of those employees to administrative positions, promotion to

higher level positions, selection for advanced teaching positions, and opportunities to earn bonuses and higher pay.

88.     On January 17, 2022, FREEMAN was constructively discharged, having been left with no choice but to initially request a hardship transfer to another school and ultimately resign because of the ongoing discriminatory treatment.

89.     BCSD violated the FCRA when it created an environment so hostile due to FREEMAN's race, African American, as to force FREEMAN to request a hardship transfer.

90.     BCSD's actions were malicious and were recklessly indifferent to FREEMAN's rights pursuant to Fla. Stat. § 760.10.

91.     As a direct and proximate result of the foregoing, FREEMAN has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and other forms of damage.

92.     What is more, the aforementioned actions of BCSD were willful, wanton, intentional, and with malice or with reckless indifference to FREEMAN's statutorily protected rights and the consequences of such actions, such that FREEMAN is entitled to punitive damages.

93.     FREEMAN has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause.

### COUNT III – SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1965, AS AMENDED

94.     Plaintiff FREEMAN adopts and incorporates by reference the allegations in Paragraphs 63 of this Complaint as if fully set forth herein.

95.     Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex [i.e. gender], or national origin."  42 U.S.C. § 2000e et seq.

96.     BCSD is an "employer" as defined by Title VII.

97.     FREEMAN is a member of a protected class of female citizens.

98.     At all times necessary, FREEMAN was qualified to perform her duties as a language arts teacher in addition to being fully qualified for advancement into an administrative position within BCSD.

99.     During the course of FREEMAN's employment with BCSD, FREEMAN was subjected to a discriminatory and offensive work environment because of her sex (female), as more fully described in the General Allegations.

100.     BCSD's discriminatory, hostile, and offensive work environment, as detailed in the above paragraphs of this Complaint, was offensive to FREEMAN and would be offensive to a reasonable person.

101.     FREEMAN was subjected to the conduct referred to in the General Allegations of this Complaint because she is female.

102.     The Principal, James Neer, of Monarch High School directed much of the conduct referred to in this Complaint at FREEMAN.

103.     FREEMAN's male counterparts were not subjected to a discriminatory, hostile, and offensive work environment, like she was.

104.     Upon information and belief, BCSD treated similarly situated male employees more favorably than they treated FREEMAN, including but not limited to support and advocacy of those to administrative positions and/or promotion to higher level positions.

105.     On January 17, 2022, FREEMAN was constructively discharged, having been left with no choice but to initially request a hardship transfer to another school and ultimately resign because of the ongoing discriminatory treatment.

106.     Any alleged nondiscriminatory reason for this treatment of FREEMAN by BCSD is a mere pretext for the actual reason for discriminating against her based on her sex.

107.     As a direct and proximate result of the foregoing, FREEMAN has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and other forms of damage.

108.     What is more, the aforementioned actions of BCSD were willful, wanton, intentional, and with malice or with reckless indifference to FREEMAN's statutorily protected rights and the consequences of such actions, such that FREEMAN is entitled to punitive damages.

109.     FREEMAN has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause.

## <u>COUNT IV – SEX DISCRIMINATION IN VIOLATION OF<br>THE FLORIDA CIVIL RIGHTS ACT OF 1992</u>

110.     Plaintiff FREEMAN adopts and incorporates by reference the allegations in Paragraphs 63 of this Complaint as if fully set forth herein.

111.     At all times material hereto, BCSD failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or

refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

112.    BCSD is an "employer" as defined by § 760.09(7) of the Florida Statutes.

113.    FREEMAN is a member of a protected class of female citizens who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

114.    At all times necessary, FREEMAN was qualified to perform her duties as a language arts teacher in addition to being fully qualified for advancement into an administrative position within BCSD.

115.    During the course of FREEMAN's employment with BCSD, FREEMAN was subjected to a discriminatory, hostile, and offensive work environment because of her sex (female), as more fully described in the General Allegations.

116.    BCSD's discriminatory, hostile, and offensive work environment, as detailed in the above paragraphs of this Complaint, was offensive to FREEMAN and would be offensive to a reasonable person.

117.    FREEMAN was subjected to the conduct referred to in the General Allegations of this Complaint because she is female.

118.    The principal of Monarch High School, James Neer, directed much of the conduct referred to in this Complaint at FREEMAN.

119.    FREEMAN's male counterparts were not subjected to a discriminatory, hostile, and offensive work environment, like she was.

120.     Upon information and belief, BCSD treated similarly situated male employees more favorably than they treated FREEMAN, including but not limited to support and advocacy of those employees to administrative positions and/or promotion to higher level positions.

121.     On January 17, 2022, FREEMAN was constructively discharged, having been left with no choice but to request a hardship transfer to another school because of the ongoing discriminatory treatment.

122.     BCSD violated the FCRA when it created an environment so hostile due to FREEMAN's sex, female, as to force FREEMAN to request a hardship transfer.

123.     BCSD's actions were malicious and were recklessly indifferent to FREEMAN's rights pursuant to Fla. Stat. § 760.10.

124.     Any alleged nondiscriminatory reason for this treatment of FREEMAN by BCSD is a mere pretext for the actual reason for discriminating against her based on her sex.

125.     As a direct and proximate result of the foregoing, FREEMAN has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and other forms of damage.

126.     What is more, the aforementioned actions of BCSD were willful, wanton, intentional, and with malice or with reckless indifference to FREEMAN's statutorily protected rights and the consequences of such actions, such that FREEMAN is entitled to punitive damages.

127.     FREEMAN has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this case.

## COUNT V – RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1965, AS AMENDED

128.    Plaintiff FREEMAN adopts and incorporates by reference the allegations in Paragraphs 63 of this Complaint as if fully set forth herein.

129.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex [i.e. gender], or national origin."  42 U.S.C. § 2000e et seq.

130.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3 et seq.

131.    BCSD is an "employer" as defined by Title VII.

132.    FREEMAN is an African American female who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

133.    FREEMAN engaged in a statutorily protected expression, namely she expressed her concerns with her discriminatory treatment through complaints— the first directly to Mr. Neer during the TEAMS meeting on February 3, 2021 and subsequently through her reporting to Broward County's EEO office in April 2021.  FREEMAN continued to express her discomfort with the discriminatory treatment she was being subjected to throughout her employment.

134.     On January 17, 2022, FREEMAN was constructively discharged, having been left with no choice but to initially request a hardship transfer to another school and ultimately resign because of the ongoing discriminatory treatment.

135.     A causal connection exists between FREEMAN's complaints of discrimination and harassment, i.e. her statutorily protected expression, and her adverse employment action, namely her constructive discharge.

136.     BCSD violated Title VII when it failed to adequately address FREEMAN's concerns of discriminatory treatment in the workplace and instead continued to foster such an improper and discriminatory environment through retaliatory actions, leading to FREEMAN's constructive discharge.

137.     As a direct and proximate result of BCSD's conduct and its employees' actions, FREEMAN has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance all of which she would have continued to receive had she not been unlawfully and constructively discharged.

138.     What is more, the unlawful employment practices complained of above committed by BCSD were willful, wanton, intentional and with malice or with reckless indifference to FREEMAN's statutorily protected rights, such that FREEMAN is entitled to punitive damages.

139.     FREEMAN has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this case.

## COUNT VI– RETALIATION BASED ON GENDER IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT OF 1992

140.     Plaintiff FREEMAN adopts and incorporates by reference the allegations in Paragraphs 63 of this Complaint as if fully set forth herein.

141.     The FCRA, Fla. Stat. Chapter 760.10(1)(a), reads in applicable part, as follows: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

142.     The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

143.     BCSD is an "employer" as defined by § 760.09(7) of the Florida Statutes.

144.     At the time of her discharge, FREEMAN was an African American female who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

145.     FREEMAN engaged in a statutorily protected expression, namely she expressed her concerns with her discriminatory treatment through complaints— the first directly to Mr. Neer during the TEAMS meeting on February 3, 2021 and subsequently through her reporting to Broward County's EEO office in April 2021.  FREEMAN continued to express her discomfort with the discriminatory treatment she was being subjected to throughout her employment.

146.    On January 17, 2022, FREEMAN was constructively discharged, having been left with no choice but to initially request a hardship transfer to another school and ultimately resign because of the ongoing discriminatory treatment.

147.    A causal connection exists between FREEMAN's complaints of discrimination and harassment, i.e. her statutorily protected expression, and her adverse employment action, namely her constructive discharge.

148.    BCSD violated the FCRA when it failed to adequately address FREEMAN's concerns of discriminatory treatment in the workplace and instead continued to foster such a discriminatory environment through retaliatory actions, leading to FREEMAN's constructive discharge.

149.    As a direct and proximate result of BCSD's conduct and its employees' actions, FREEMAN has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance, all of which she would have continued to receive had she not been unlawfully terminated.

150.    What is more, the unlawful employment practices complained of above committed by BCSD were willful, wanton, intentional and with malice or with reckless indifference to FREEMAN's statutorily protected rights, such that FREEMAN is entitled to punitive damages.

151.    FREEMAN has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this case.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, TAMMY FREEMAN, demands judgment against Defendant, BROWARD COUNTY SCHOOL DISTRICT, and requests the following relief:

1. Enter judgment in favor of FREEMAN for BCSD's violations of Title VII and the FCRA;

2. Award FREEMAN actual damages suffered;

3. Award back pay and value of lost employment benefits to FREEMAN;

4. Award front pay to FREEMAN for the time she would have worked absent BCSD's discriminatory treatment;

5. Enter judgment in favor of FREEMAN for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress FREEMAN has suffered and continues to suffer;

6. Award FREEMAN punitive damages;

7. Award FREEMAN all costs and reasonable attorney's fees incurred in connection with this action;

8. Award prejudgment interest on all monetary recovery obtained;

9. Issue an injunction permanently enjoining BCSD, its officers, agents, employees, assigns and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of gender; and

10. Grant such additional or alternative relief as may appear to this Court to be just and equitable

## <u>JURY TRIAL DEMAND</u>

Plaintiff, TAMMY FREEMAN, demands a trial by jury on all issues so triable.

Dated November 15, 2022.

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
SAMANTHA L. SIMPSON, ESQUIRE
Florida Bar No.: 1010423
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** samantha@sconzolawoffice.com
**Secondary Email:** alexa@sconzolawoffice.com